UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| ANGELA CLARK, )<br>    Plaintiff, )<br>)<br>v. )<br>)<br>UBS, et al., )<br>    Defendants. ) | Civil Action No. 3:19-cv-00510<br>Judge Crenshaw / Frensley |

## REPORT AND RECOMMENDATION

### I. INTRODUCTION AND BACKGROUND

This matter is before the Court upon a Motion to Dismiss filed by Defendant UBS Business Solutions US LLC ("Defendant" or "UBS"). Docket No. 23. Along with that Motion, Defendant has contemporaneously filed a supporting Memorandum of Law. Docket No. 24.

Plaintiff, who is proceeding pro se, has filed a Response to the instant Motion. Docket No. 26.

Defendant has filed a Reply. Docket No. 31.

Plaintiff filed her Complaint in this action on June 18, 2019. Docket No. 1. In her Complaint, Plaintiff avers that from 2016-2017, while employed by HCL American and working at UBS, because of her gender, she was subject to a hostile work environment, bullying, harassment, and wrongful termination. *Id.* Plaintiff avers that her manager would make comments like, "I am the king of the castle, you have to do what I say" and "I'm the boss"; and also made derogatory comments about women being emotional and having personal issues. *Id.* Plaintiff further asserts that her manager was biased, assigned her different tasks than he did his male employees, and treated her differently than his male employees. *Id.* Plaintiff avers that she was given unfavorable reviews, threated with termination for no reason, and not given rewards. *Id.* She

additionally avers that when she tried to tell her manager's manager, she was bullied and told not to discuss it. *Id.* Plaintiff seeks monetary relief. *Id.*

Defendant filed the instant Motion to Dismiss and supporting Memorandum of Law on November 18, 2021, arguing that Plaintiff's Complaint should be dismissed for: (1) insufficient service of process; (2) failure to comply with this Court's Order to effectuate service of process on Defendant; and (3) failure to state a claim upon which relief may be granted. Docket Nos. 23, 24. Specifically, Defendant argues that Plaintiff's service should be deemed insufficient because it failed to include required information on the Return of Service, and pursuant to Fed. R. Civ. P. 41(b) for failure to comply with a Court Order. Docket No. 24. Defendant also argues that Plaintiff's Title VII claims fail as a matter of law because Defendant was not Plaintiff's employer and therefore cannot be held liable under the statute. *Id.* Defendant additionally argues that Plaintiff's defamation claim is "precisely the type of unadorned allegation that courts hold insufficient to state a plausible claim for relief." *Id.*

Plaintiff has filed a Response arguing that Defendant's Motion should be denied because: (1) she served Defendant during the additional time granted by this Court; (2) Defendant functioned as a "joint employer" because the UBS Manager "created the environment and precedence as a joint employer and HCL America nurtured nor [*sic*] did not oppose that environment and standard," and the UBS Manager "consistently held performance reviews." Docket No. 26.

Defendant has filed a Reply arguing that: (1) "Plaintiff *attempted* to serve UBS with process on October 7, 2021," but Plaintiff's October 7, 2021, service attempt failed to provide sufficient proof of service because Plaintiff did not identify the person served in the applicable section of the server's affidavit, as required by Tenn. R. Civ. P. 4.03. Docket No. 31. Defendant

2

argues, "This Court afforded Plaintiff multiple opportunities to serve Defendant past her original September 16, 2021, deadline, including the Court's September 22, 2021, Order extending her time to effect service to October 22 and warning her that her failure to do so may result in dismissal." *Id.* Defendant continues that, on October 13, "Plaintiff submitted proof of service identifying the person who accepted service on behalf of UBS as 'illegible name,'" and that, "despite having until October 22 to correct this deficiency and attempt service by mail again," Plaintiff did not do so, such that her "failure to submit adequate proof of service or take advantage of the additional time extended to her by the Court and permitted under Rule 4.03 warrants dismissal." *Id*.

Defendant additionally replies that Plaintiff's Complaint fails to contain factual allegations with respect to all material elements of her claim that UBS functioned as her joint employer because the factors courts must consider when determining whether an entity is the joint employer of another entity's formal employees are "the ability to hire, fire, and discipline, affect compensation and benefits, and direct and supervise performance." *Id., quoting Nethery v. Quality Care Invs., L.P.,* 382 F. Supp. 3d 776, 780 (M.D. Tenn. 2019), *quoting Sanford v. Main St. Baptist Church Manor, Inc.,* 449 F. App'x 488, 492 (6th Cir. 2011).

Defendant argues that "Plaintiff failed to include any allegations at all in her Complaint demonstrating that UBS functioned as her joint employer, including her contention in her reply brief that her UBS Client Manager 'consistently held performance reviews.'" *Id.* Defendant continues, "Plaintiff's Complaint is devoid of any allegations sufficient to reasonably infer that UBS determined any of the essential terms and conditions of her employment or had the ability to hire, fire, discipline, affect compensation and benefits, and direct and supervise her performance. And while Plaintiff does allege that she had one bad performance review and was not given a raise

3

or reward during her tenure with HCL, her complaint contains the type of conclusory, threadbare allegations contemplated by the *Iqbal/Twombly* pleading standard and fails to state a plausible claim for relief as to UBS." *Id.* Defendant argues that Plaintiff's failure to do so therefore warrants dismissal. *Id.*

For the reasons set forth below, the undersigned recommends that Defendant's Motion be **GRANTED**, that Plaintiff's claims against UBS be **DISMISSED WITH PREJUDICE**, and that UBS be **TERMINATED** as a Defendant in this action.

## II. LAW AND ANALYSIS

### A. Fed. R. Civ. P. 41(b)

Pursuant to Fed. R. Civ. P. 41(b), district courts have the authority to dismiss an action for the failure of a plaintiff to prosecute the claim or comply with the rules or any order of the court. *Schafer v. City of Defiance Police Dept.*, 529 F.3d 731 736 (6th Cir. 2008); *Knoll v. AT&T*, 176 F.3d 359, 362-63 (6th Cir. 1999).

Specifically, Fed. R. Civ. P. 41(b) provides:

> **(b) Involuntary Dismissal; Effect.** If the plaintiff fails to prosecute or to comply with these rules or a court order, a defendant may move to dismiss the action or any claim against it. Unless the dismissal order states otherwise, a dismissal under this subdivision (b) . . . operates as an adjudication on the merits.

When evaluating whether dismissal for failure to prosecute is appropriate, courts consider four factors:

1. Whether the party's failure is due to willfulness, bad faith, or fault;

2. Whether the adversary was prejudiced by the dismissed party's conduct;

3. Whether the dismissed party was warned that failure to cooperate would lead to dismissal; and

4. Whether less drastic sanctions were imposed or considered before the dismissal was ordered.

*Knoll,* 176 F.3d at 363; *Schafer* 529 F.3d at 737.

While no single factor is dispositive, the dismissal of a claim for failure to prosecute is appropriate when the record shows contumacious conduct by a plaintiff. *Wu v. T.W. Wang, Inc.,* 420 F.3d 641, 643 (6th Cir. 2005); *Knoll,* 176 F.3d at 363. "Contumacious" behavior is defined as "perverse in resisting authority" and "stubbornly disobedient." *Schaffer*, 529 F.3d at 736, *quoting Webster's Third New International Dictionary* 497 (1986).

Additionally, a plaintiff's actions will be deemed to be motivated by bad faith, willfulness, or fault if the plaintiff displays an "intent to thwart judicial proceedings or a reckless disregard for the effect of [his] conduct on those proceedings." *Mulbah v. Detroit Bd. Of Educ.*, 261 F.3d 586, 591 (6th Cir.2001); *Wu*, 420 F.3d at 643. A plaintiff that "does not act in bad faith, but 'nevertheless shows willfulness and fault in that he was at best extremely dilatory in not pursuing his claim,' indicates an intention to allow his case to lapse." *Kovacic v. Tyco Vales & Control, LP*, 433 Fed. Appx. 376, 380 (6th Cir. 2011), *quoting Shafer*, 529 F. 3d at 739.

### B. Fed. R. Civ. P. 12(b)(6)

Fed. R. Civ. P. 12(b)(6) provides that a claim may be dismissed for failure to state a claim upon which relief can be granted. In order to state a claim upon which relief can be granted, a complaint must contain either direct or inferential allegations respecting all material elements to sustain a recovery under some viable legal theory. *Mezibov v. Allen*, 411 F.3d 712, 716 (6th Cir. 2005). Conclusory allegations or legal conclusions masquerading as factual allegations will not suffice. *Id.* A complaint containing a statement of facts that merely creates a suspicion of a legally cognizable right of action is insufficient. *Bell Atlantic Corp. v. Twombly,* 127 S.Ct. 1955, 1965 (2007). The "[f]actual allegations must be enough to raise a right to relief above the speculative level"; they must "state a claim to relief that is plausible on its face." *Id*. at 1965, 1974. *See also,*

5

*Ass'n of Cleveland Fire Fighters v. City of Cleveland*, 502 F.3d 545, 548 (6th Cir. 2007).

Moreover, the United States Supreme Court addressed the appropriate standard that must be applied in considering a Motion to Dismiss for failure to state a claim. *See Ashcroft v. Iqbal*, 556 U.S. 662 (2009). The *Iqbal* Court stated in part as follows:

> Two working principles underlie our decision in *Twombly*. First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of the cause of action, supported by mere conclusory statements, do not suffice . . . . Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for plaintiff armed with nothing more than conclusions. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss . . . . Determining whether a complaint states a plausible claim for relief will, as the Court of Appeals observed, be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. . . . But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not "show[n]" - "that the pleader is entitled to relief."

556 U.S. at 678-79 (citations omitted).

### C. Title VII of the Civil Rights Act of 1964

#### 1. Generally

Title VII of the Civil Rights Act of 1964 ("Title VII") protects employees from discrimination on the basis of an individual's race, color, religion, sex, or national origin, and provides, in part:

> It shall be an unlawful employment practice for an employer--
>
> 1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or
>
> 2) to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin.

42 U.S.C. § 2000e-2.

Federal courts do not have jurisdiction to hear Title VII claims unless the claimant explicitly files the claim in an EEOC charge or the claim can reasonably be expected to grow out of the EEOC charge. *Abeita v. TransAmerica Mailings, Inc.*, 159 F.3d 246, 254 (6th Cir. 1998), *citing Ang v. Procter & Gamble Co.,* 932 F.2d 540, 544-45 (6th Cir. 1991). Thus, as a prerequisite to bringing a Title VII discrimination claim in federal court, a claimant is required to file a charge of discrimination or retaliation with the EEOC and is precluded from seeking judicial review until the Commission has made a final disposition of his claim. 42 U.S.C. § 2000e-5. *See also, United Air Lines, Inc. v. Evans*, 431 U.S. 553, 554, 97 S. Ct. 1885, 1887, 52 L. Ed. 2d 571 (1977). The wording of the allegations in the EEOC charge does not, however, have to be exact or all-encompassing; rather, the court may consider allegations not explicitly stated in the EEOC charge if those allegations could reasonably be expected to grow out of the charge of discrimination. *Tipler v E. I. du Pont de Nemours & Co.*, 433 F.2d 125, 131 (6th Cir. 1971), *citing Sanchez v. Standard Brands, Inc.,* 431 F.2d 455, 465-66 (5th Cir. 1970)*; King v. Georgia Power Co.*, 295 F. Supp. 943 (N.D. Ga. 1968).

In order to establish a prima facie case of discrimination in violation of Title VII, a plaintiff must prove that,

1) she is a member of a protected class;

2) she was qualified for her job and performed it satisfactorily;

3) despite her qualifications and performance, she suffered an adverse employment action; and

4) that she was replaced by a person outside the protected class or was treated less favorably than a similarly situated individual outside her protected class.

*Johnson v. University of Cincinnati*, 215 F.3d 561, 572-73 (6th Cir. 2000), *citing McDonnell*

*Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973).[1]

A plaintiff may establish a claim of discrimination under Title VII either by introducing direct evidence of discrimination, or by proving circumstantial evidence that would support an inference of discrimination. *Johnson v. Univ. of Cincinnati*, 215 F. 3d 561, 572 (6th Cir. 2000), *citing Kline v. Tennessee Valley Auth.*, 128 F. 3d 337, 348 (6th Cir. 1997). "The direct evidence and the circumstantial evidence paths are mutually exclusive; a plaintiff need only prove one or the other, not both." *Id.*

Under the direct evidence approach, once the plaintiff introduces evidence that the employer terminated her because of her protected status, the burden of persuasion shifts to the employer to prove that it would have terminated the plaintiff even had it not been motivated by discrimination. *Johnson*, 215 F.3d at 572, *citing Manzer v. Diamond Shamrock Chemicals Co.*, 29 F.3d 1078, 1081 (6th Cir. 1994), *citing Price Waterhouse v. Hopkins*, 490 U.S. 228, 244-45, 109 S. Ct. 1775, 104 L. Ed. 2d 268 (1989).

If the plaintiff lacks direct evidence of discrimination, the circumstantial evidence approach is used and the *McDonnell Douglas-Burdine* tripartite test is employed. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973), as later clarified by *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 101 S. Ct. 1089, 67 L. Ed. 2d 207 (1981). The *McDonnell Douglas-Burdine* tripartite test requires the plaintiff to first establish a prima facie case of discrimination. *Id.* If the plaintiff is able to do so, a mandatory presumption of discrimination is created and the burden shifts to the defendant to articulate some legitimate,

---

[1] An adverse employment action is one that causes a materially adverse change in a term of employment, such as significantly diminished responsibilities, termination, a demotion evidenced by a decrease in wage or salary, a less distinguished title, or a material loss of benefits. *See Kocsis v. Multi-Care Mgmt.*, 97 F.3d 876, 885-86 (6th Cir. 1996).

nondiscriminatory reason for the employee's rejection. *Id.* If the defendant carries this burden, the plaintiff must then prove that the proffered reason was actually pretextual. *Id.* The plaintiff may establish pretext by showing that, 1) the stated reasons had no basis in fact; 2) the stated reasons were not the actual reasons; or 3) the stated reasons were insufficient to explain the defendant's action. *Id. See also, Cicero v. Borg-Warner Automotive, Inc.,* 280 F.3d 579, 589 (6th Cir. 2002). "A reason cannot be proved to be 'a pretext for discrimination' unless it is shown both that the reason was false, and that discrimination was the real reason." *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 515, 113 S. Ct. 2742, 125 L. Ed. 2d 407 (1993).

### 2. **Hostile Work Environment**

In order to establish a prima facie case of hostile work environment under Title VII, a plaintiff must prove that,

1) she is a member of a protected class;

2) she was subject to unwelcome harassment;

3) the harassment was based on her protected class; and

4) the harassment created a hostile work environment.

*Clark v. United Parcel Service, Inc.*, 400 F.3d 341, 347 (6th Cir. 2005).

A hostile work environment exists when "the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Harris v. Forklift Sys., Inc.,* 510 U.S. 17, 21 (1993). The environment must not only be objectively hostile but also one that a reasonable person would find hostile or abusive. *Id.* at 21-22.

### 3. **Retaliation and Retaliatory Discharge**

In order to establish a prima facie case of retaliation under Title VII, a plaintiff must prove

that,

1) she engaged in activity protected by Title VII;

2) her exercise of the protected activity was known by the defendant;

3) thereafter, the defendant took an action that was materially adverse to the plaintiff; and

4) a causal connection exists between the protected activity and the materially adverse action.

*Laster v. City of Kalamazoo*, 746 F.3d 714, 730 (6th Cir. 2014).

### D. The Case at Bar

A brief discussion of the relevant history of this action will be helpful to its resolution.

On October. 30, 2017, Plaintiff, an IT professional who was employed by HCL America and assigned to work on a long-term project at UBS, filed an EEOC Charge of Discrimination alleging claims of retaliation, race, and gender discrimination. Docket Nos. 1, 5. The EEOC issued its Dismissal and Notice of Rights to Sue on March 19, 2019, determining that no employer/employee relationship existed between Plaintiff and UBS. Docket No. 5.

On June 18, 2019, Plaintiff filed the instant action alleging that her UBS manager discriminated against her on account of her gender; that she informed HCL America management, but they failed to investigate or protect her; and that when she requested to be reassigned to a different HCL America client, HCL terminated her. Docket Nos. 1, 5. After Plaintiff filed the instant action on June 18, 2019, nothing happened until the Court entered a Show Cause Order on February 24, 2021, informing Plaintiff that she had yet to effectuate service on either Defendant. Docket No. 14. The Court directed Plaintiff to show cause by March 17, 2021, why her Complaint should not be dismissed pursuant to Fed. R. Civ. P. 41(b) based on her failure to serve Defendants and prosecute her claims. *Id.*

10

On March 3, 2021, Plaintiff filed a letter and attached documentation demonstrating her attempts to effectuate service on both Defendants. Docket No. 15. Plaintiff filed a second letter on August 12, 2021, requesting a status update. Docket No. 16. On September 22, 2021, this Court entered an Order extending the deadline for Plaintiff to effectuate service "one final time" and gave her until October 22, 2021, to do so. Docket No. 17. The Court warned Plaintiff that "failure to obtain service on Defendants within the time allowed by the Court and the Federal Rules of Civil Procedure may result in a recommendation that her case will be dismissed without prejudice." *Id.*

On October 5, 2021, Plaintiff mailed a certified copy of the Complaint and summons to HCL America and "UBS, c/o Corporation Service Company" (UBS' authorized agent). *Id.* On October 13, 2021, Plaintiff filed proof of service on UBS and a return receipt indicating that UBS was served on October 7, 2021. Docket No. 19. As proof of service, Plaintiff wrote "illegible name" in the area designated for the name of the individual who accepted service on behalf of UBS. *Id.*

As discussed above, Defendant UBS argues that Plaintiff's proof of service with "illegible name" written in the area designated for the name of the individual who accepted service on behalf of UBS is deficient, and "amounts to a failure to comply with Federal Rule 4 and this Court's Order." Docket No. 24. Defendant further argues that Tenn. R. Civ. P. 4.03 explicitly requires that "the person serving the summons shall promptly make proof of service to the court and *shall identify the person served and shall describe the manner of service.*" *Id., quoting* Tenn. R. Civ. P. 4.03(1)(emphasis in original). Defendant maintains that proper service is a prerequisite in order for the Court to have personal jurisdiction over it, and argues that, "it is immaterial whether [a defendant] has actual knowledge of the lawsuit. A defendant's actual knowledge of the lawsuit is

no substitute for proper service of process under Fed. R. Civ. P. 4." *Id, quoting Taylor v. Stanley Works*, No. 4:01-cv-120, 2001 WL 32058966, at *3 (E.D. Tenn. July 16, 2002), *citing LSJ Investment Co., Inc. v. O.L.D., Inc.*, 167 F.3d 320, 322 (6th Cir. 1999). Defendant argues that because Plaintiff's service attempt fails to meet the procedural requirements under Fed. R. Civ. P. 4, Plaintiff's claims against UBS should be dismissed. Docket No. 24.

In the instant action, Plaintiff's proof of service is actually proof of attempted service, as writing "illegible name" fails to comply either with the State or Federal Rules. Accordingly, Plaintiff has failed to effectively effectuate service upon Defendant UBS.

Even if Plaintiff had properly served Defendant UBS, however, Plaintiff cannot prevail on her Title VII claim because Title VII applies only to *employers,* and by Plaintiff's own admission, she was employed by HCL America, and it was HCL America who assigned her to work on a long-term project at Defendant UBS. Docket Nos. 1, 5. Moreover, Plaintiff acknowledged in her own filings that: (1) she informed HCL America management, but they failed to investigate or protect her; (2) she requested to be reassigned to a different HCL America client: and (3) HCL terminated her. *Id*. Although Plaintiff seeks to hold Defendant UBS accountable as a "joint employer," Plaintiff's own filings establish that she was employed by HCL America and that it was HCL America, and not UBS, that performed the hiring, assigning, transferring, investigating, disciplining, and terminating.

Plaintiff has adduced no evidence to establish that Defendant UBS was in any way a "joint employer" subject to liability under Title VII. Accordingly, the undersigned finds that HCL America, and not UBS, was Plaintiff's employer. Because Title VII is applicable only to

12

Case 3:19-cv-00510   Document 41   Filed 05/26/22   Page 12 of 13 PageID #: 151

employers, Plaintiff cannot sustain her Title VII claims against Defendant UBS.[2]

## III. CONCLUSION

For the reasons discussed above, the undersigned recommends that Defendant's Motion be **GRANTED**, that Plaintiff's claims against UBS be **DISMISSED WITH PREJUDICE**, and that UBS be **TERMINATED** as a Defendant in this action.

Under Rule 72(b) of the Federal Rules of Civil Procedure, any party has fourteen (14) days after service of this Report and Recommendation in which to file any written objections to this Recommendation with the District Court. Any party opposing said objections shall have fourteen (14) days after service of any objections filed to this Report in which to file any response to said objections. Failure to file specific objections within fourteen (14) days of service of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation. *See Thomas v. Arn,* 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed. 2d 435 (1985), *reh'g denied*, 474 U.S. 1111 (1986); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

                    **JEFFERY S. FRENSLEY**
                    **United States Magistrate Judge**

---

[2] Plaintiff also asserts – albeit sparsely – that she was defamed. Docket No. 1. Plaintiff's defamation claim states in its entirety, "Defamation – states that I had to be fired to people which was untrue." *Id.* This statement fails to identify who allegedly made this statement, to whom, where it was made (internally or publicly), what, if any, ramifications it had, or what, if any, damage it caused. Accordingly, Plaintiff's statement is insufficient to state any claim.