## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
## NASHVILLE DIVISION

| | | |
|---|---|---|
| **ANGELA CLARK,** | ) | |
| **Plaintiff,** | ) | |
| | ) | **Civil Action No. 3:19-cv-00510** |
| **v.** | ) | **Chief Judge Crenshaw/Frensley** |
| | ) | |
| **UBS, et al.** | ) | |
| **Defendants.** | ) | |

## REPORT AND RECOMMENDATION

## I.    INTRODUCTION

On May 31, 2022, UBS Business Solutions US LLC ("UBS") and HCL America, Inc. ("HCL") (collectively "Defendants"), filed "Defendants' Motion for Summary Judgment." Docket No. 42. Defendants contemporaneously filed a "Memorandum in Support of Defendants' Motion for Summary Judgment." Docket No. 44. Defendants also filed a "Statement of Undisputed Facts" (Docket No. 43) and an "Appendix of Documents Cited in Memorandum in Support of Defendant's Motion for Summary Judgment" (Docket No. 45). Angela Clark ("Plaintiff") filed "Plaintiff's Response and Objection to Defendant's, HCL Motion for Summary Judgment" (Docket No. 47) followed by a revised version (Docket No. 48).[1] Plaintiff filed "Plaintiff's Response to Defendant, HCL's Statement of Undisputed Material Facts." Docket No. 49. Defendants then filed a "Reply Brief in Support of Defendants' Motion for Summary Judgment." Docket No. 53. Plaintiff filed a "Response and Objection" to Defendant's reply. Docket No. 54.

For the following reasons, the undersigned recommends that Defendants' Motion for Summary Judgment (Docket No. 42) be **GRANTED**.

---

[1] Plaintiff is proceeding pro se in this matter.

## II.    PROCEDURAL BACKGROUND

When HCL terminated Plaintiff by removing her from the Available for Deployment ("AFD") list, Plaintiff filed a Charge with the Equal Employment Opportunity Commission ("EEOC") alleging claims of gender discrimination, retaliation, hostile work environment, wrongful termination, defamation, and breach of contract. Docket No. 5, p. 1. Defendant HCL, responded to Plaintiff's EEOC Charge, contesting her allegations. Docket No. 48, pp. 15-17. On March 13, 2019, the EEOC mailed Plaintiff a "Dismissal and Notice of Rights" indicating that the EEOC's investigation was unable to establish a Title VII violation as to HCL. Docket No. 5, p. 4. On March 19, 2019, the EEOC mailed Plaintiff a second "Dismissal and Notice of Rights" indicating that the EEOC was closing Plaintiff's file on the Charge against UBS because no employer relationship existed. *Id*. at 2.

Plaintiff filed her Complaint in this matter on June 18, 2019. Docket No. 1. Plaintiff named UBS and HCL as Defendants, claiming they had discriminated against her because of her gender in violation of Title VII of the Civil Rights Act of 1964. *Id*. at 3. Plaintiff asserted claims of a hostile work environment, retaliation, wrongful termination, defamation, and breach of contract. *Id*. at 3-5. Plaintiff filed her "Dismissal and Notice of Rights" letters separately on June 20, 2019. Docket No. 5.

On February 24, 2021, the Court issued a Show Cause Order stating that Defendants had not been served and requiring Plaintiff to explain why the case should not be dismissed for failure to prosecute. Docket No. 14. After Plaintiff responded to the Show Cause Order (Docket No. 15), the Court extended the service deadline to October 22, 2021 (Docket No. 17). Plaintiff then served Defendants on October 13, 2021. Docket Nos. 19, 20. UBS filed a Motion to Dismiss (Docket No. 23) pursuant to Fed. R. Civ. P. 12(b)(5), 12(b)(6), and 41(b), and HCL filed an Answer on

November 19, 2021, responding to the Complaint and raising affirmative defenses (Docket No. 25).

On May 26, 2022, the Court recommended granting UBS's Motion to Dismiss (Docket No. 41), which Judge Crenshaw declined to adopt (Docket No. 55) on July 13, 2022. Now, the Court is adjudicating Defendants' joint Motion for Summary Judgment. Docket No. 42.

## III.  RELEVANT FACTS

### A.  Statement of Undisputed Facts

When supporting factual positions on a motion for summary judgment:

(1) A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or

> (B) showing that the materials cited to do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c).

Moreover, Local Rule 56.01 in the Middle District of Tennessee provides:

**(c)    Response to Statement of Facts.** Any party opposing the motion for summary judgment must respond to each fact set forth by the movant by either:

> **(1)**    Agreeing that the fact is undisputed;

> **(2)**    Agreeing that the fact is undisputed for the purpose of ruling on the motion for summary judgment only; or

> **(3)**    Demonstrating that the fact is disputed. Each disputed fact must be supported by specific citation to the record.

The response must be made on the document provided by the movant or on another document in which the non-movant has reproduced the facts and citations verbatim

3

as set forth by the movant. In either case, the non-movant must make a response to each fact set forth by the movant immediately below each fact set forth by the movant. Such response must be filed with the papers in opposition to the motion for summary judgment. In addition, the non-movant's response may contain a concise statement of any additional facts that the non-movant contends are material and as to which the non-movant contends there exists a genuine issue to be tried. Each such disputed fact must be set forth in a separate, numbered paragraph with specific citations to the record supporting the contention that such fact is in dispute. A copy of the statement of additional disputed facts must also be provided to opposing counsel in an editable electronic format. *Pro se parties are excused only from providing a copy of the statement of additional disputed material facts to opposing counsel in an editable electronic format, and such pro se parties must otherwise comply with the requirements of this section.*

LR 56.01 (emphasis added).

Additionally, in the Scheduling Order issued on December 3, 2021, the Court stated:

In responding to the motions for summary judgment, [P]laintiff may not just rely on the [C]omplaint. Plaintiff must show there is a material dispute of fact with citation to the record, affidavits or other matter of evidence. Plaintiff should read and comply with Federal Rule of Civil Procedure 56 and Local Rule 56.01.

Docket No. 29, p. 3.

Courts in the Middle District of Tennessee have repeatedly considered a statement of material facts to be undisputed when parties opposing a motion for summary judgment fail to comply with LR 56.01 by not including citations to the records. *English v. Advance Auto Parts*, No. 3:20-cv-00959, 2021 U.S. Dist. LEXIS 254028 (M.D. Tenn. Dec. 22, 2021), *report and recommendation adopted* by No. 3:20-cv-00959, 2022 U.S. Dist. LEXIS 32473 (M.D. Tenn. Feb. 24, 2022); *Smith v. Corr. Corp. of Am.*, No. 3:13-1152, 2014 U.S. Dist. LEXIS 129482, at *8 (M.D. Tenn. July 29, 2014); *George v. Vought Aircraft Indus.*, Civil Action No. 3:08-0787, 2009 U.S. Dist. LEXIS 121142, at *4 n. 2 (M.D. Tenn. Oct. 30, 2009); *Geesling v. Clay Cty.*, No. 2:06-0056, 2007 U.S. Dist. LEXIS 64519, at *3 n. 1 (M.D. Tenn. Aug. 30, 2007).

Between "Plaintiff's Response and Objection to Defendant's, HCL Motion for Summary Judgment – Revised" (Docket No. 48), "Plaintiff's Response to Defendant, HCL's Statement of

Undisputed Material Facts" (Docket No. 49), and Plaintiff's Response to Defendant's Reply (Docket No. 54), the Court uncovered only three citations to the record.[2] *See* Docket No. 48, p. 1, ¶ 1. As a result, Defendants' Statement of Facts will be treated as undisputed, with those three exceptions, for purposes of summary judgment.

The Plaintiff, Angela Clark, is an information technology professional hired by Defendant HCL in April 2015 to work as an IT Administrator on a project for HCL's client Defendant UBS. Docket No. 43, ¶ 2. The Plaintiff was part of team of employees supervised by a UBS client manager responsible for facilitating deployment. *Id.* at ¶ 3. The Plaintiff reported directly to several of HCL's supervisors who participated and conducted Plaintiff's performance reviews and initiated her disciplinary actions in conjunction with HCL's Human Resources. *Id.* at ¶ 4 and 5.

On August 8, 2017, Plaintiff requested assistance from HCL HR Business Partner, Charles Ebenezer at his quarterly town hall for HCL employees to get her reassigned to a different HCL project. *Id.* at ¶6. Plaintiff indicated the request was because she was having issues getting along with her UBS manager and felt he engaged in favoritism and treated her unfairly. *Id.* at ¶7. Upon Mr. Ebenezer's advice, Plaintiff submitted a formal complaint on August 9, 2017, requesting reassignment to another HCL project and asserting that she had been subjected to unfair treatment at UBS. *Id.* at ¶ 8. HCL initiated an investigation into the complaints by interviewing Plaintiff's HCL direct supervisors and coordinating with UBS HR Director of Employee Relations Charlotte Wolfe, who interviewed UBS employees and reviewed relevant documents. *Id.* at ¶¶ 10-11. The investigation revealed that there had been no prior complaints against the UBS manager and that HCL was unable to substantiate Plaintiff's claims of unfair treatment. *Id.* at ¶¶ 13-14. Plaintiff was

---

[2] Plaintiff attaches what appear to be five separate exhibits to her Response to Summary Judgment, yet she cites to only three exhibits once each in her filings. *See* Docket No. 48, pp. 13-25. The fifth exhibit is illegible. *Id*. at 25.

further advised that her request to be removed from the UBS project had been approved. *Id.*

Per the Plaintiff's request, she was designated to an HCL program known as Available For Deployment ("AFD") which afforded employees wishing to be reassigned thirty (30) days during which HCL attempted to place them on another client project. *Id.* at ¶ 15. Plaintiff was advised that her chances for placement on another project would greatly increase if she was willing relocate but Plaintiff indicated she wished to limit her search parameters to Tennessee. *Id.* at ¶¶ 16-17. Based on Plaintiff's limited availability to Tennessee, no projects became available during the authorized period and she was released from her employment after thirty-seven (37) days on AFD. *Id.* at ¶ 18. Plaintiff's last day of employment was September 10, 2017. *Id.* The Plaintiff concedes that no one at HCL or UBS threatened to terminate her, failed to promote her, or failed to reward or train because of her status as a woman. *Id.* at ¶21. She further conceded in her deposition that she failed to include any claims for retaliation in her Complaint. Plaintiff was unable to identify any similarly situated non protected employee treated more favorably than her or that she was replaced by someone outside her protected category. During the course of the investigation of Plaintiff's complaints it was determined that Plaintiff had received negative feedback from her HCL supervisors regarding her performance and attendance issues and that members of UBS's support team, on occasion, assisted Plaintiff with some of her job duties. *Id.* at ¶¶ 12-13.

In February of 2018, Plaintiff was hired by a placement company to work as a business analyst for Premise Health. *Id.* at ¶ 19. She voluntarily resigned that position on or about April 2018 following a verbal altercation with her client manager. *Id.* at ¶ 20.

1.      **Clark Deposition**

When discussing Plaintiff's employment with Defendants, Plaintiff stated that HCL hired her, compensated her, and provided her with benefits packages. Docket No. 45-1 at p. 5, 66:12-

6

69:5.

Regarding performance reviews, Plaintiff stated that two HCL managers, Vishu and Sreehari, signed off on her performance reviews which consisted entirely of written feedback. *Id*. at p. 6, 86:2-87:22. Plaintiff attested that she only received two performance reviews and never received negative feedback. *Id*. at p. 6, 87:10-88:24. Plaintiff conceded that her HCL managers did discuss her attendance issues with her. *Id*. at pp. 6-7, 89:8-93:10. Plaintiff revealed that Herschberg, Plaintiff's UBS project manager, had issues with Plaintiff reporting her time as well as her requests for time off and to work from home. *Id*. at p. 7, 91:21-93:6. Herschberg raised these issues with Dilip, one of Plaintiff's HCL supervisors, who then discussed the matter with Plaintiff. *Id*. at p. 7, 92:3-93:10.

Defendants' Counsel asked Plaintiff questions about the EEOC Charge that she filed in June of 2019. *Id*. at p. 8, 94:5-95:17. Plaintiff confirmed her claims that HCL and UBS discriminated against her based on her gender, retaliated against her, defamed her, and breached their contract with her. *Id*. at p. 8, 95:18-24. Plaintiff reiterated the following claims: she sat in a small room with a man who had a problem with women and made inappropriate comments weekly; she received unfavorable reviews; HCL failed to investigate her formal complaint filed with Charles Ebenezer, HCL's Human Resources Business Partner; HCL's failure to assess and remediate her formal complaint to Ebenezer left her without a job; she had a different workload than male coworkers; HCL threatened her with termination for no reason; male workers were treated better than women; she received no rewards or raises when other junior male coworkers had; she did not receive training like other junior male coworkers did; she was asked to do work unrelated to her job; a UBS manager called a female employee hostile because she was Indian and could not have kids; that same UBS manager made comments about slapping a different employee,

7

telling that employee to "shut up" and calling that employee a "B."[3] *Id*. at pp. 8-9, 95:25-98:17. Plaintiff believed that all of these events were discriminatory "[j]ust by what he said, his actions with other women, and the way he treated me throughout my duration there on the team." *Id*. at p. 9, 99:3-5.

When asked about explicit examples of gender discrimination, Plaintiff admitted that no one at HCL or UBS ever said that Plaintiff's gender was the reason she received unfavorable reviews, was threatened with termination, received no rewards or raises, or failed to receive training. *Id*. at p. 9, 99:13-100:5. With regards to her defamation claim, Plaintiff stated that she did not include any allegations about defamation in her EEOC Charge, but she based her claim for defamation on what she claims she heard from other employees: that Patrick Hart, a fellow HCL employee on the UBS project, told Herschberg that HCL had to fire Plaintiff. *Id*. at p. 9, 100:6-101:22. Plaintiff proffered her breach-of-contract claim due to HCL's failure to investigate Plaintiff's formal complaint to Ebenezer and protect her as stated in HCL's employee handbook. *Id*. at p. 10, 102:4-6. Regrading her retaliation claim, Plaintiff did not include any specific details in her Complaint to support a retaliation claim. *Id*. at p. 10, 104:7-105:13.

Plaintiff relayed that she first complained to Ebenezer on August 8, 2017, discussing Herschberg's unfair treatment. *Id*. at pp. 10-11, 105:18-106:5. In this discussion with Ebenezer, Plaintiff recalled that she felt like she was being discriminated against and had already complained to multiple HCL supervisors and employees, including Sesha, Dilip, Saurabh, Sreehari, Hapayya, and Archana. *Id*. at p. 11, 106:10-107:9. In these complaints made in 2016 and 2017, Plaintiff claimed that she never used the word discrimination, but she did discuss favoritism and unfair

---

[3] It appears that the UBS manager's comments were not made directly to the employee who was the subject of the remarks.

treatment by Herschberg. *Id*. at p. 11, 107:10-108:24. Saurabh brought Plaintiff's complaints to Herschberg's attention and returned to Plaintiff with Herschberg's concerns. *Id*. at p. 11, 108:25-109:11. Sreehari and Dilip both had multiple conversations with Plaintiff to try and help her with issues. *Id*. at pp. 11-12, 109:12-111:1. Also, Plaintiff "subtly" complained to Karen Norris, a UBS client manager and Herschberg's manager, about Herschberg excluding Plaintiff from a training. *Id*. at p. 12, 111:4-112:5.

In Plaintiff's formal complaint to Ebenezer, she asked about being reassigned to a new project. *Id*. at p. 13, 114:2-8. Ebenezer informed Plaintiff about HCL's policy that Plaintiff had thirty days to find a new assignment, that if Plaintiff could not find a new assignment she would be terminated, and that Plaintiff had better chances of finding a new assignment if she were willing to relocate. *Id*. at p. 13, 115:2-23. Plaintiff indicated to Ebenezer that she was not willing to relocate. *Id*. at p. 13, 116:1-14. Plaintiff was removed from the UBS project on or around August 30, 2017. *Id*. at p. 13, 116:15-117:11.

With respect to potential damages, Plaintiff has not suffered physical manifestations related to her emotional damage. *Id*. at p. 14, 134:10-12. Plaintiff has generally discussed being impacted by prior work experience with a medical provider, but that provider was not a counselor, psychologist, or psychiatrist. *Id*. at p. 14, 134:16-136:3. No medical provider has diagnosed Plaintiff with any emotional-related harm or prescribed any medications related to emotion harm. *Id*. at p. 14, 136:4-12. However, Plaintiff claimed she has lost confidence and has become anxious and emotional. *Id*. at pp. 14-15, 137:9-138:14.

### 2. Wolfe Declaration

Charlotte Wolfe currently works as Legal Counsel and is a Director in the Global Litigation Americas Group for UBS Financial Services Inc. Docket No. 45-2, Wolfe Decl. ¶ 1. Prior to that

role, UBS employed Wolfe as an HR Employee Relations Specialist from February of 2015 through December of 2017, and during that time, she was responsible for "leading and conducting investigations of employee complaints" amongst other things. *Id*. at ¶ 2. Wolfe coordinated with HCL and conducted the UBS investigation into Plaintiff's formal complaint to Ebenezer. *Id*. at ¶ 3. During her investigation, Wolfe interviewed Herschberg, Gia DiCamillo, and Ryan Heywood, all of whom were UBS employees that worked with Plaintiff's release team. *Id*. at ¶ 4. Wolfe also conducted a review of Hart's time entry records in an attempt to corroborate Plaintiff's claims about Herschberg's time-entry policy and a review of Herschberg's personnel file. *Id*. Ultimately, Wolfe concluded that no other employees had complained about Herschberg, his coworkers held him in high regards, he was neighbors and friends with Hart, and that DiCamillo sometimes had to assist Plaintiff with her work duties. *Id*. at ¶ 5.

### 3. Ebenezer Declaration

Charles Ebenezer has worked as a Human Resources Business Partner for HCL since February of 2007. Docket No. 45-3, Ebenezer Decl. ¶ 1. Ebenezer identified that Plaintiff worked on the UBS release team with Hart and that Herschberg supervised both Plaintiff and Hart. *Id*. at ¶ 3. On August 8, 2015, Ebenezer conducted an HR townhall where Plaintiff first approached Ebenezer about her issues and desire to be reassigned.[4] *Id*. at ¶¶ 4-5. Ebenezer recommended that Plaintiff email him with a formal complaint. *Id*. at ¶ 5. After Ebenezer received the formal complaint, he initiated an investigation by interviewing Plaintiff's HCL supervisors and coordinating with Wolfe from UBS. *Id*. at ¶ 6. The investigation yielded findings that HCL

---

[4] The date listed in the declaration is presumably incorrect because all the parties indicate that Plaintiff emailed Ebenezer on August 9, 2017, one day after the in-person townhall. In its current form, the date in the declaration lists 2015 as the year, but after reading the briefs and exhibits, it is obvious to the Court that this is a typo and should read as August 8, 2017.

10

supervisors had given Plaintiff negative feedback on her performance and attendance issues, and Ebenezer concluded that Plaintiff's discrimination claims were unsubstantiated. *Id*. at ¶¶ 6-7. Ebenezer then contacted Plaintiff, shared the results of the investigation, and informed her that her request to be removed from the UBS project had been approved. *Id*. at ¶ 8.

Under its reassignment policy, HCL placed Plaintiff on the AFD list and helped Plaintiff try to find a new client project. *Id*. at ¶¶ 9-10. Per its policy, HCL gave Plaintiff thirty days to find a new assignment. *Id*. at ¶ 9. Ebenezer informed Plaintiff that her chances of finding a new assignment would greatly increase if she were willing to relocate out of the state of Tennessee to New York, Texas, or California where most of HCL's clients were.[5] *Id*. at ¶ 11. Plaintiff refused to expand the geographic parameters of her reassignment search, and as a result, HCL could not find a new project for Plaintiff in Tennessee. *Id*. at ¶¶ 12-13. HCL released Plaintiff from her employment after thirty-seven days on the AFD list. *Id*. at ¶ 14.

### 4. Clark Email

On August 9, 2017, Plaintiff sent an email to Ebenezer lodging a formal complaint "regarding the discriminatory treatment that [she has] received for over 2 years while on this project." Docket No. 45-5, p. 2. Plaintiff informed Ebenezer that she had requested to be reassigned by HCL management but had not been, so Plaintiff reiterated that request to Ebenezer. *Id*. Plaintiff stated that she had already made several unremedied complaints about her UBS line manager. *Id*. In this email, Plaintiff complained that because she is a woman, she had been discriminated against and subject to a hostile work environment. *Id*. at 3. Plaintiff listed "[p]rocesses and policy compliance and enforcement, [t]raining and KT, [d]istribution of work, expectations,

---

[5] It appears that Plaintiff knew that if she had chosen to "re-skill," she may have had more options for reassignment in Tennessee. Docket No. 45-1, Clark Dep., p. 13, 115:14-17.

11

requirements, [i]nclusion, [i]nappropriate discussions and behavior, [s]etup to fail" as examples of her unfair treatment. *Id.* To conclude, Plaintiff asserted that the small office, unpleasant conversations, favoritism, and sexism impacted her morale and her physical health. *Id.*

**5.      Plaintiff's Statement**

Plaintiff attaches what appears to be an unsworn, unsigned statement relating her feelings about the incidents that took place on the UBS project while she was an employee of HCL and the steps she took to file a charge with the EEOC. Docket No. 48, pp. 18-24. The Court will not analyze the allegations set forth in this document because Plaintiff simply states that this document exists and explains her timeline of events but never cites to specific portions of this document in her arguments. Docket No. 48, p. 1, ¶ 7; Docket No. 48, pp. 18-24.

## IV.      LAW AND ANALYSIS

As a preliminary matter, Plaintiff argues that because Defendants filed their Motion for Summary Judgment on May 31, 2022, a day after the May 30, 2022, deadline, Defendants' Motion should be denied. Docket No. 48, p. 1. However, Plaintiff does note that May 30, 2022, was the Memorial Day holiday. *Id.* Pursuant to Fed. R. Civ. P. 6(a)(1)(C) and Fed. R. Civ. P. 6(a)(6)(A), Defendants' deadline to file their Motion for Summary Judgment extended until May 31, 2022, which was the next day that was not a Saturday, Sunday, or Legal Holiday.

### A.      Summary Judgment Standard

Fed. R. Civ. P. 56(a) provides:

A party may move for summary judgment, identifying each claim or defense-or the part of each claim or defense-on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. The court should state on the record the reasons for granting or denying the motion.

Under Fed. R. Civ. P. 56(c), summary judgment is appropriate only "if the pleadings,

depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." A dispute is "genuine" only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986).

In order to prevail on a motion for summary judgment, the moving party must meet the burden of proving the absence of a genuine issue of material fact concerning an essential element of the opposing party's claim. *Celotex v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553, 91 L. Ed. 2d 265 (1986); *Street v. J.C. Bradford & Co.*, 886 F. 2d 1472, 1477 (6th Cir. 1989). In determining whether the moving party has met its burden, the Court must view the evidence in the light most favorable to the nonmoving party. *Matsushita Electric Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986).

Fed. R. Civ. P. 56 provides that the nonmoving party may not rest upon the mere allegations or denials of his or her pleading, but his or her response, by affidavits or otherwise, must set forth specific facts showing that there is a genuine issue for trial. If a nonmoving party, fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial, there is no genuine issue as to any material fact because a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. *Celotex*, 477 U.S. at 322-23, 106 S. Ct. at 2552, 91 L. Ed. 2d at 273. When this occurs, the moving party is entitled to summary judgment as a matter of law. *Id*. at 322-23, 106 S. Ct. at 2552; *Williams v. Ford Motor Co.*, 187 F. 3d 533, 537-38 (6th Cir. 1999).

### B.     UBS

For Title VII claims, an employee must demonstrate that the defendant fits within the statutory meaning of employer. *Nethery v. Quality Care Inv'rs, L.P.*, 814 F. App'x 97, 102 (6th Cir. 2020). "Entities that do not otherwise meet the definition of employer (either because they do not formally employ the plaintiff or do not meet the numerosity requirement) may still face liability through the single-employer or joint-employer doctrines." *Sanford v. Main St. Baptist Church Manor, Inc.*, 449 F. App'x 488, 491 (6th Cir. 2011) (citation omitted). An entity is a joint-employer when it "share[s] or co-determine[s] those matters governing essential terms and conditions of employment." *EEOC v. Skanska USA Bldg., Inc.*, 550 F. App'x 253, 256 (6th Cir. 2013). "To determine whether an entity is the plaintiff's joint-employer, we look to an entity's ability to hire, fire or discipline employees, affect their compensation and benefits, and direct and supervise their performance." *Id*.

Defendants argue that UBS is entitled to summary judgment on all claims against it because Plaintiff has failed to prove that UBS was her employer or joint-employer. Docket No. 44, p. 6. Defendants contend "that HCL was the entity with the power to hire, fire, or discipline Plaintiff." *Id*. at 7. Defendants posit that HCL recruited and hired Plaintiff, maintained responsibility for disciplining Plaintiff as evidenced by HCL's steps to discuss Plaintiff's attendance issues with her, conducted Plaintiff's performance reviews, controlled the means by which Plaintiff could be terminated, paid Plaintiff's salary, and oversaw Plaintiff's benefits. *Id*. at 7-8. Defendants also highlight that Plaintiff's Complaint and deposition testimony demonstrate that Plaintiff communicated with HCL supervisors and human resources with any issues pertaining to Plaintiff's team at UBS. *Id*. at 8. Defendant avers that Plaintiff cannot demonstrate that UBS co-determined any essential condition of Plaintiff's employment with HCL. *Id*.

Nowhere in Plaintiff's Response does she point to any facts that would suggest UBS was

14

her employer. *See* Docket No. 48. In fact, Plaintiff's response is devoid even of any contention that UBS qualified as her employer or joint-employer. *Id*. In their reply, Defendants assert that Plaintiff conceded that UBS was not her employer by failing to raise any factual or legal arguments to dispute that fact. Docket No. 53, p. 5.

HCL hired Plaintiff in April of 2015. Docket No. 45-1, Clark Dep., p. 5, 66:9-13; Docket No. 25-4, p. 2. HCL conducted Plaintiff's performance reviews and dealt with disciplinary issues pertaining to Plaintiff's attendance concerns.[6] Docket No. 45-1, Clark Dep., p. 6, 86:3-93:15. While Plaintiff was working on the UBS project, HCL compensated Plaintiff and provided her with a benefits package. Docket No. 45-1, Clark Dep., p. 5, 68:18-69:5. When Plaintiff had issues with her work environment and fellow employees at UBS, Plaintiff contacted Ebenezer, an Human Resources Business Partner for HCL, to formally complain and ask for reassignment. Docket No. 45-3, Ebenezer Decl. ¶¶ 4-5, 8; Docket No. 45-5; Docket No. 45-6. Ebenezer initiated the investigation into Plaintiff's claims. Docket No. 45-3, Ebenezer Decl. ¶ 6. Finally, HCL facilitated Plaintiff's reassignment attempts and ultimate termination from the company. Docket No. 45-3, Ebenezer Decl. ¶¶ 9-14. As noted above, Plaintiff cites nothing to dispute these material facts, and no evidence even suggests that UBS hired, fired, compensated, disciplined, or reviewed Plaintiff.[7]

Thus, the Court finds that there is no genuine dispute of material fact as to whether UBS qualified as an employer or a joint-employer under Title VII. UBS was neither an employer nor a joint-employer. Accordingly, UBS is entitled to judgment as a matter of law because Plaintiff's

---

[6] Herschberg, a UBS employee, also raised Plaintiff's attendance issues, but Herschberg reported these issues to Plaintiff's HCL managers. Docket No. 45-1, Clark Dep. 91:15-92:8.

[7] Plaintiff even goes so far as to argue that HCL "was responsible for getting my project work completed in which I did successfully, why was UBS Client Manager from day 1, always harassing me about my time." Docket No. 48, pp. 2-3. Although this statement is part of Plaintiff's brief and not an exhibit, this statement suggests that HCL was solely responsible for directing her daily work.

15

gender discrimination, hostile work environment, retaliation, and wrongful termination claims each require an *employer* to engage in some kind of illegal conduct.

Moreover, Plaintiff's defamation claim against UBS fails for two reasons. First, Plaintiff does not specifically allege that UBS made a defamatory statement and provides no evidence that UBS made a defamatory statement. *See* Docket No. 1. Second, even considering Defendants' theory that HCL or UBS could be liable under the doctrine of *respondeat superior*, the claim fails because Hart was not a UBS employee. Docket No. 45-1, Clark Dep., p. 9, 100:6-101:22; Docket No. 48, p. 2, ¶ 11; Docket No. 48, p. 3; Docket No. 48, p. 8.[8] UBS is entitled to judgment as a matter of law on Plaintiff's breach of contract claim because Plaintiff alleges that only HCL breached a contract by failing to comply with its employee handbook. Docket No. 45-1, Clark Dep., pp. 9-10, 101:23-102:19.

For the foregoing reasons, the Court recommends granting summary judgment with respect to every claim against UBS. Thus, the following analysis addresses the claims against HCL.

## C.      Title VII of the Civil Rights Act of 1964

Title VII of the Civil Rights Act of 1964 ("Title VII") protects employees from discrimination on the basis of an individual's race, color, religion, sex, or national origin, and provides, in part:

> It shall be an unlawful employment practice for an employer—
>
> 1)      to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or

---

[8] Docket No. 48, p. 2, ¶ 11 and Docket No. 48, p. 8 are citations to Plaintiff's brief, not materials in the record as required by Fed. R. Civ. P. 56(c)(1)(A). However, the Court cites to these pages to demonstrate that Plaintiff effectively concedes that Hart was an HCL employee and that Plaintiff fails to meet her burden on summary judgment to dispute a material fact.

16

2)    to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin.

42 U.S.C. § 2000e-2.

A plaintiff may establish a claim of discrimination under Title VII either by introducing direct evidence of discrimination, or by providing circumstantial evidence that would support an inference of discrimination. *Johnson*, 215 F. 3d at 572 (citing *Kline v. Tennessee Valley Auth.*, 128 F. 3d 337, 348 (6th Cir. 1997)). "The direct evidence and the circumstantial evidence paths are mutually exclusive; a plaintiff need only prove one or the other, not both." *Id*.

Under the direct evidence approach, once the plaintiff introduces evidence that the employer terminated her because of her protected status, the burden of persuasion shifts to the employer to prove that it would have terminated the plaintiff even had it not been motivated by discrimination. *Johnson*, 215 F. 3d at 572 (citing *Manzer v. Diamond Shamrock Chemicals Co.*, 29 F. 3d 1078, 1081 (6th Cir. 1994)).

If the plaintiff lacks direct evidence of discrimination, the circumstantial evidence approach is used and the *McDonnell Douglas-Burdine* tripartite test is employed. See *McDonnell Douglas Corp.*, 411 U.S. at 792, as later clarified by *Texas Dep't of Cmty. Affs. v. Burdine*, 450 U.S. 248, 101 S. Ct. 1089, 67 L. Ed. 2d 207 (1981). The *McDonnell Douglas-Burdine* tripartite test requires the plaintiff to first establish a *established* case of discrimination. *Id*. If the plaintiff is able to do so, a mandatory presumption of discrimination is created and the burden shifts to the defendant to articulate some legitimate, nondiscriminatory reason for the employee's rejection. *Id*. If the defendant carries this burden, the plaintiff must then prove that the proffered reason was actually pretextual. *Id*. The plaintiff may establish pretext by showing that, 1) the stated reasons

17

had no basis in fact; 2) the stated reasons were not the actual reasons; or 3) the stated reasons were insufficient to explain the defendant's action. *Id.*; *see also Cicero v. Borg-Warner Automotive, Inc.*, 280 F. 3d 579, 589 (6th Cir. 2002). "A reason cannot be proved to be 'a pretext for discrimination' unless it is shown both that the reason was false, and that discrimination was the real reason." *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 515, 113 S. Ct. 2742, 125 L. Ed. 2d 407 (1993).

In order to establish a *prima facie* case of discrimination in violation of Title VII, a plaintiff must prove that:

1)      [s]he is a member of a protected class;

2)      [s]he suffered an adverse employment action;

3)      [s]he was qualified for the position as issue; and

4)      [s]he was treated differently than similarly situated non protected employees.

*Golden v. Metro Government for Nashville and Davidson county,* 263 F. Supp 3d 684, 691 (M. D. Tenn. 2017)(citing *Wright v. Murray Guard, Inc.,* 435 F. 3d 702, 707 (6th Cir. 2006).

Defendants argue that Plaintiff's Title VII discrimination claim fails as a matter of law because Plaintiff cannot support the second, third, and fourth elements of her claim. Docket No. 44, p. 9. Defendants contend Plaintiff was not subject to an adverse employment action because "perceived slights, unfair criticism of her work, and generalizations about being held to different standards" do not qualify as adverse employment action. *Id.* at 10. Defendants assert that Plaintiff did not satisfactorily perform a position she was qualified for because she received negative feedback about attendance and required assistance from other team members to carry out her duties. *Id.* at 11. Defendants advance that HCL neither replaced Plaintiff with a person outside the protected class nor treated similarly situated, non-protected employees more favorably. *Id.* at 9.

18

Defendants depict Plaintiff's sworn admissions about her treatment as "vague and unsupported belief[s]" that fail to prove gender discriminations. *Id.* at 12. Ultimately, Defendants aver that Plaintiff's Title VII claim fails as a matter of law. *Id.* at 9.

Plaintiff responds that Defendants have failed to provide any evidence that they did not discriminate against her. Docket No. 48, pp. 1-2, ¶ 5. Without providing any record evidence to support this contention, Plaintiff asserts that her performance reviews were "egregiously and suspiciously done." *Id.* at 2, ¶ 8. Regarding an adverse employment action, Plaintiff contends that HCL terminated her. *Id.* at 2, ¶ 7. Plaintiff offers Hart as a comparator and alleges that he has had only one HCL supervisor since onboarding whereas Plaintiff has had multiple in the same period. *Id.* at 2, ¶ 11.

Defendant replies that any counterarguments that Plaintiff proffered lack specific citations to the record. Docket No. 53, p. 5. Accordingly, Defendant claims that Plaintiff's unsupported, bare assertions render Defendant's Motion unopposed. *Id.* Bearing all that in mind, Defendant adds that Plaintiff has not identified a comparator who is similarly situated as defined by the Sixth Circuit. *Id.*

Because Plaintiff does not provide any direct evidence of discrimination, the Court will engage in a circumstantial approach analysis. Plaintiff bears the burden of proof to establish a *prima facie* case of discrimination under Title VII. Under the first step of the circumstantial approach, no one disputes that Plaintiff is a member of a protected class. Plaintiff is a woman, and her sex is protected under Title VII. Docket No. 45-1, Clark Dep., p. 8-9, 95:3-100:5. Her resume, which Defendants introduced, indicates that she was in fact qualified for the kind of work HCL employed her to do. *See generally* Docket No. 45-4. The Court finds that Plaintiff satisfies the first two elements of establishing a *prima facie* case of discrimination in violation of Title VII.

19

### D. Adverse Employment Actions

Plaintiff asserts essentially two theories of liability under Title VII. First, she asserts that she was subjected to a hostile work environment and second, she was wrongfully terminated. Docket No. 5, p. 1.

### 1. Hostile Work Environment

In order to establish a *prima facie* claim of hostile work environment under Title VII, the ADA, or the ADEA, a plaintiff must establish that:

1)    [s]he is a member of a protected class;

2)    [s]he was subjected to unwelcome harassment;

3)    the harassment was based on a protected classification;

4)    the harassment unreasonably interfered with [her] work performance by creating an intimidating, hostile, or abusive work environment; and

5)    the existence of employer liability.

*Faragher v. City of Boca Raton*, 524, U.S. 775, 787-88, 118 S. Ct. 2275, 141 L. Ed. 2d 662 (1988).

A hostile work environment is established upon proof of conduct that is "sufficiently severe or pervasive 'to alter the conditions of [the victim's] employment and create an abusive working environment.'" *Meritor Savings Bank, FSB, v. Vinson*, 477 U.S. 57, 67 (1986) (quoting *Henson v. City of Dundee*, 682 F. 2d 897, 904 (11th Cir. 1982)).

In determining whether an environment is hostile, a court looks to the totality of the circumstances, which may include the following considerations: "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; whether it unreasonably interferes with an employee's work performance; and the employee's psychological well-being." *Campbell v. Fla. Steel Corp.*, 919 S. W .2d 26, 32 (Tenn. 1996). Employee complaints about the "ordinary tribulations of the workplace, such as the

sporadic use of abusive language, gender-related jokes, and occasional teasing" will not suffice to entitle a plaintiff to relief under Title VII. *Baugham v. Battered Women, Inc.*, 211 F. App'x 432, 438 (6th Cir. 2006), (quoting *Faragher*, 524 U.S. at 788). It is only "[w]hen the workplace is permeated with 'discriminatory intimidation, ridicule, and insult,' that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment,' [that] Title VII is violated." *Harris v. Forklift Sys. Inc.*, 510 U.S. 17, 21, 114 S. Ct. 367, 126 L. Ed. 2d 295 (1993) (quoting *Meritor*, 477 U.S. at 65, 67). "Simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment." *Faragher*, 524 U.S. at 788.

A hostile work environment exists when "the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Harris*, 510 U.S. at 21. The environment must not only be objectively hostile but also one that a reasonable person would find hostile or abusive. *Id*. at 21-22. "

Defendants argue that Plaintiff's hostile work environment claim fails because Plaintiff cannot establish that the conduct she was subject to was "severe and pervasive." Docket No. 44, pp. 12-13. Defendants contend that this claim also fails because Plaintiff cannot provide any evidence to show that the alleged harassment was gender-based. *Id*. at 15. Finally, Defendants posit that they cannot be vicariously liable for Herschberg's alleged acts because HCL has a policy against harassment and because Defendants promptly took steps to investigate and eliminate the alleged harassment once the issue was brought to their attention. *Id*. at 15-16.

Plaintiff responds that Defendants have failed to show that the work environment was not hostile. Docket No. 48, pp. 1-2, ¶ 5. Plaintiff contends that Herschberg, since the beginning, has

been holding one-on-one meetings with her to bully her. *Id*. at 4. At a bare minimum, Plaintiff argues, Defendants could have moved her to a different work environment. *Id*. at 3, ¶ 15.

As established above, Plaintiff's sex makes her a member of a protected class. Plaintiff's deposition testimony makes clear that she was subject to comments that made her feel as though she was in a hostile work environment. Docket No. 45-1, Clark Dep., p. 9, 98:5-17.

Plaintiff testified in her deposition regarding the following complaints of workplace harassment:

> Plaintiff sat in a very small room with a man that had a problem with women and made inappropriate comments. Docket No. 45-1, p. 96.

> Herschberg engaged in a conversation about that a lady that she said emotional and hostile because she was Indian and could not have kids. *Id.* at p. 98

> Herschberg made comments about slapping a woman and telling her to shut up. *Id.*

> Herschberg called his manager a "B." *Id.*

An objectively hostile work environment exists where a reasonable person would find the work environment hostile or abusive. *Harris v. Forklift Sys. Inc.*, 510 U.S. 17, 21 (1993). Conduct is more likely to be objectively hostile where it is "continuous and not sporadic." *Wyatt v. Nissan NA Inc.*, 999 F. 3d 400, 411 (6th Cir 2021).

There is no question that the Plaintiff subjectively believed her environment to be hostile. However, the undersigned finds that the harassment was not "sufficiently severe or pervasive to alter the conditions of the Plaintiff's employment and create an abusive working environment. *Phillips* v. *UAW, International,* 854 F. 3d 323, 327 (6th Cir. 2017)(internal citations omitted).

The Plaintiff's complaints identified by her in her deposition do not relate nor were they specifically directed to her, did not involve physical contact or sexual allusions and were not physically threatening or humiliating such that they altered the terms and conditions of Plaintiff's

22

employment. Occasional offensive utterances such as the ones described by the Plaintiff do not rise to the level required to create a hostile work environment. *Faragher*, 524 U.S. at 775, 778 (1998). Thus, the alleged harassment is not objectively sufficiently severe and pervasive to "amount to discriminatory changes in the terms and conditions of her employment." *Id.* Because she cannot establish this element of the *prima facie* case, her claim must fail. Even if she could establish a *prima facie* claim, the evidence establishes the Defendant took prompt remedial action to remove her from the environment and place her into the reassignment program as she requested.

### 2. Wrongful Termination

To the extent that the Plaintiff argues that her termination was discriminatory, that claim must also fail.

With regards to wrongful termination, Defendants argue that Plaintiff cannot establish a wrongful termination claim because Plaintiff "fails to identify a similarly situated non-protected employee who was treated more favorably than her or include evidence establishing that she was replaced by someone outside her protected class." Docket No. 44, p. 19. Likewise, Defendants submit that Plaintiff's inability to be reassigned through the AFD process is a legitimate, non-discriminatory reason for her termination. *Id*. Defendants opine that Plaintiff cannot show that this legitimate reason is pretext because there is a basis in fact for the termination, HCL's articulated reasons were sufficient to motivate discharge, and Plaintiff is unable to show that HCL's reasons did not actually motivate discharge. *Id*. at 20-21. Defendants claim that the basis in fact for termination is that Plaintiff knew about the of the AFD procedure and knew that she would have a better chance of being reassigned if she were willing to relocate. *Id*. at 20. Defendants posit HCL's articulated reasons were sufficient to motivate discharge because HCL investigated Plaintiff's claims, found the claims to be unsubstantiated, granted Plaintiff's request to leave the UBS project,

and assisted Plaintiff in trying to get reassigned, despite Plaintiff's self-imposed location parameters. *Id*. at 21. Defendants proffer that Plaintiff will be unable to show that HCL's reasons did not actually motivate discharge because Plaintiff asked to be taken off the UBS contract. *Id*.

Plaintiff offers no specific discernable argument with regards to her wrongful termination claim and fails to cite to the record to create a genuine issue of material fact.

Plaintiff's termination was not the result of alleged misconduct. Rather, following her request for reassignment, her employment was terminated by operation of HCL's policy after not finding an alternative placement with another client. Docket No. 43, ¶ 18. While Plaintiff's termination is an adverse employment action, the real issue is whether the policy on reassignment was implemented in a discriminatory manner. The Plaintiff points to no individuals outside her protected category who requested reassignment under the policy and were treated more favorable than she was.

Nonetheless, even if Plaintiff met her burden of establishing a *prima facie* of discrimination as to her termination, HCL has offered a legitimate, non-discriminatory reason for releasing Plaintiff from her employment. In this situation, the burden shifts back to Plaintiff to show that HCL's reason lacks a basis in fact, was not the legitimate reasons for Plaintiff's discharge, or was insufficient to explain HCL's actions. However, Plaintiff does not supply any citation to the record showing that HCL's reason was flawed.

As for a basis in fact, Defendants' decision to terminate Plaintiff is grounded in the time limit of its AFD policy. The AFD policy guarantees thirty days for reassignment, and HCL provided thirty-seven days. Docket No. 45-3, Ebenezer Decl. ¶¶ 9, 14. Plaintiff has pointed to nothing in the record to show that the expiration of the thirty day AFD period was not the legitimate reason for discharge. In fact, the record shows that Ebenezer tried to assist Plaintiff in her

24

reassignment attempts which suggests that HCL wanted to keep Plaintiff on and find a work environment that would be less troubling for her. *Id.* at ¶¶ 8, 11-13. Further, HCL's reason for discharging Plaintiff is sufficient because it would be impractical for HCL to keep Plaintiff employed in perpetuity, waiting for a position in Middle Tennessee to open up. HCL need not accommodate Plaintiff beyond the thirty days set forth in the AFD policy. Nevertheless, HCL gave Plaintiff an additional week on the AFD list. Docket No. 45-3, Ebenezer Decl. ¶ 14. Thus, even if Plaintiff could prove a *prima facie* case, when the burden shifts back to Plaintiff, her claims would fail because she fails to provide any evidence to show that Defendants' reason was pretextual. Accordingly, Defendants are entitled to judgment as a matter of law on these claims.

## E.     Retaliation

In order to establish a *prima facie* case of retaliation under Title VII, a plaintiff must prove:

1.      [s]he engaged in activity protected by Title VII;

2.      her exercise of the protected activity was known by the defendant;

3.      thereafter, the defendant took an action that was materially adverse to the plaintiff; and

4.      a causal connection exists between the protected activity and the materially adverse action.

*Laster v. City of Kalamazoo*, 746 F. 3d 714, 730 (6th Cir. 2014).

Defendants argue that Plaintiff's retaliation claim fails because Plaintiff's complaint does not identify that her engagement in a protected activity (complaining to HR) resulted in an adverse employment action. Docket No. 44, p. 17. Defendants contend that "(1) excluding her from trainings; (2) giving her assignments at the last minute; (3) and an incident in which Hart became irate" do not constitute a change in the terms of her employment. *Id.* at 17-18. Defendants also assert that Plaintiff did not produce sufficient evidence to establish causation between her protected

25

activity and her adverse treatment. *Id*. at 18. Defendants maintain that "[e]vidence of treatment to which Plaintiff was already subjected prior to her complaint is not sufficient to establish the causal connection required." *Id*.

Plaintiff responds that she was retaliated against because she filed a formal complaint against UBS. Docket No. 48, p. 8. As a result, Plaintiff states that HCL kept assigning her new supervisors and gave her poor performance reviews. *Id*. Plaintiff contends that her negative performances reviews prevented her from remaining on the AFD list for longer than 30 days. *Id*. Ultimately, Plaintiff argues that HCL retaliated against her because her comment soured the business relationship between HCL and UBS. *Id*.

In this case, Plaintiff engaged in a protected activity when she filed a formal complaint about Herschberg with Ebenezer. Docket No. 45-5. *See Laster*, 746 F. 3d at 730 (citing *Trujillo v. Henniges Auto. Sealing Sys. N. Am.*, 495 F. App'x 651, 653 (6th Cir. 2012) ("We have repeatedly held that complaints to human resources personnel regarding potential violations of Title VII constitute protected activity for purposes of establishing a *prima facie* case of retaliation.")). Defendants knew about this protected activity because Plaintiff complained to Ebenezer, HCL's HR Business Partner, who conducted his own review and contacted Wolfe, UBS's HR Employee Relations Specialist, so that she could investigate the matter herself. Docket No. 45-3, Ebenezer Decl. ¶ 6; Docket No. 45-2, ¶¶ 3-5.

"A tangible employment action constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Burlington Indus. v. Ellerth*, 524 U. S. 742, 761 (1998). In her complaint, Plaintiff states that exclusion from trainings, being given assignments at the last minute, and dealing with an irate Herschberg constitute retaliatory behavior. Docket No.

26

1; Docket No. 45-1, Clark Dep., p. 10, 103:14-105:13. None of the complained-of actions qualify as an adverse employment action. A negative performance review does not constitute an adverse employment action either, but termination does.

To the extent that a negative performance review may be an adverse employment action, Plaintiff does not provide any evidence of a causal connection between her complaint and her negative review. Despite Plaintiff's repeated allegations, there is no proof cited to in the record that any negative review happened after Plaintiff's August 9, 2017, formal complaint to Ebenezer. To defeat Defendants' Motion for Summary Judgment, Plaintiff must point to some evidence to support her claims, not rely on unsubstantiated allegations. Plaintiff fails to do so.

Moreover, Plaintiff's termination is not causally connected to her formal complaint to Ebenezer. Plaintiff complained to Ebenezer on August 9, 2017, and asked to be removed from her current assignment. Docket No. 45-5. After investigating the complaint, Ebenezer informed Plaintiff that her request to be removed was approved, and at that point, Plaintiff *voluntarily* entered AFD on September 10, 2017, knowing that she had thirty days to find a new assignment. Docket No. 45-3, Ebenezer Decl. ¶ ¶ 7-8. Thirty-seven days later, when HCL was not able to find a new assignment within Plaintiff's geographical parameters, HCL released Plaintiff from her employment on October 17, 2017. *Id*. at ¶¶ 13-14. The Plaintiff does not assert that she was forced into the reassignment program by the Defendants or that she would not have been allowed to stay in her current employment had she not requested reassignment. Further, the Plaintiff points to no similarly situated individuals who sought reassignment through the program but were either afforded more time than allowed under the policy (as she was) or otherwise treated more favorably with respect to reassignment.

The undersigned finds that Plaintiff was released because she was unable to find a new

assignment after being given the opportunity to find a new assignment, not because she complained. HCL adhered to its own AFD policy in trying to honor Plaintiff's request for reassignment. Because Plaintiff does not cite to any evidence showing that her termination was causally connected to her formal complaint to Ebenezer, Defendants are entitled to judgment as a matter of law on the retaliation claim.

### E.    Defamation

To establish a defamation claim in Tennessee, a plaintiff must prove that "1) a party published a statement; 2) with knowledge that the statement is false and defaming to the other; or 3) with reckless disregard for the truth of the statement or with negligence in failing to ascertain the truth of the statement." *Sullivan v. Baptist Mem. Hosp.*, 995 S. W. 2d 569, 571 (Tenn. 1999).

Under the first element, a party publishes a statement when that party communicates that statement to a third party. *Quality Auto Parts Co. v. Bluff City Buick Co.*, 876 S. W .2d 818, 821 (Tenn. 1994) (citation omitted) (recognizing that "published" in this sense is a term of art). Defamation also requires the statement to have resulted in an actual injury, typically to the person's character or reputation. *Hibdon v. Grabowski*, 195 S. W. 3d 48, 58 (Tenn. Ct. App. 2005) (citing *Quality Auto Parts Co*, 876 S. W. 2d at 820).

The defamation claim is based on Hart's statement that Plaintiff "had to be fired." Docket No. 1. Defendants argue that Plaintiff's defamation claim fails because the record lacks evidence showing "whether Hart had authority to make statements on behalf of HCL; whether Hart published the statement in question; and if so, where the statement was published." Docket No. 44, p. 23.  Thus, Defendants assert that a defamation claim raised under the theory of *respondeat superior* fails. *Id*. Defendants contend that even if evidence could prove Defendants vicarious liability, the substantial proof of her termination from HCL will be an absolute bar to the

28

defamation claim. *Id.*

Plaintiff's response does not contain any arguments supporting a claim of defamation, but Plaintiff does restate that Hart told coworkers that Defendants had to fire Plaintiff. Docket No. 48, p. 8. Defendants reply that Plaintiff effectively conceded this claim by failing to address any of Defendant's arguments. Docket No. 53, p. 6.

Here, Hart's statement to Herschberg that HCL "had to fire" Plaintiff constitutes a published statement because Hart made that statement to a third party. Docket No. 45-1, Clark Dep. 101:5-22. However, on the second element, Plaintiff's claim fails because Hart's statement was not false. Defendants concede that Plaintiff was in fact terminated. Docket No. 44, p. 23. Moreover, Plaintiff suffered no injury as a result of Hart's statement. Plaintiff was able to find similar employment with Insight Global who placed her as an IT analyst with Premise Health.[9] Docket No. 45-1, Clark Dep., pp. 3-4, 46:23-49:25, 54:1-55:6; Docket No. 45-4, p. 2. Further, Plaintiff does not cite to any emotional damages directly caused by Hart's statements. Because Plaintiff cannot prove the required elements of a defamation claim, Defendants are entitled to judgment as a matter of law.

### F.  Breach of Contract

To establish a breach of contract, plaintiffs "must prove the existence of a valid and enforceable contract, a deficiency in the performance amounting to a breach, and damages caused by the breach." *Fed. Ins. Co. v. Winters*, 354 S. W. 3d 287, 291 (Tenn. 2011) (citing *ARC LifeMed, Inc. v. AMC-Tennessee, Inc.*, 183 S. W. 3d 1, 26 (Tenn. Ct. App. 2005)). Tennessee courts will only find that employee handbooks constitute contracts if a handbook contains specific language

---

[9] Plaintiff's employment with Premise Health ended after a few months due to an unrelated incident with her manager, Matt. Docket No. 45-1, Clark Dep. 56:12-57:14.

showing an employer's intent to be bound by the handbook. *Smith v. Morris*, 778 S. W. 2d 857, 858 (Tenn. Ct. App. 1988). Likewise, employee handbooks must contain binding commitments or guarantees to qualify as a contract. *Whittaker v. Care-More, Inc.*, 621 S. W. 2d 395, 397 (Tenn. Ct. App. 1981).

Plaintiff bases her breach of contract claim on an alleged violation of HCL's employee handbook. Docket No. 1. Defendants argue that Plaintiff's breach of contract claim also fails as a matter of law for two reasons. Docket No. 44, p. 23. First, Defendants maintain that employee handbooks do not constitute contracts that can give rise to a breach of contract claim. *Id*. Second, Defendants assert that HCL acted in a manner consistent with regulations set forth by its employee handbook. *Id*. Thus, Defendant posits that any breach of contract claim fails. *Id*. Plaintiff responds that neither HCL nor UBS initiated an investigation into her complaints. Docket No. 48, p. 5.

This claim fails on the first step because Plaintiff does not cite to any evidence of a valid and enforceable contract. Plaintiff bears the burden of producing the employee handbook and proving that the handbook constituted a contract. In her second Response, Plaintiff attaches a handful of images of both HCL's and UBS's employee handbooks. Docket No. 54, pp. 7-13. However, these images are not cited to in her brief. Additionally, Plaintiff fails to establish that these handbooks constituted a contract. Plaintiff provides no evidence of an offer, acceptance or consideration. Therefore, the Court need not address any further claims about breach of contract because Plaintiff does not provide any factual support for her assertion. *See Celotex*, 477 U.S. at 325 ("[T]he burden on the moving party may be discharged by 'showing' - that is, pointing out to the district court - that there is an absence of evidence to support the nonmoving party's case.").

## V.    CONCLUSION

For the reasons set forth herein, the undersigned recommends that Defendants' Motion for

Summary Judgment (Docket No. 42) be **GRANTED.**

Under Rule 72(b) of the Federal Rules of Civil Procedure, any party has fourteen (14) days after service of this Report and Recommendation in which to file any written objections to this Recommendation with the District Court. Any party opposing said objections shall have fourteen (14) days after service of any objections filed to this Report in which to file any response to said objections. Failure to file specific objections within fourteen (14) days of service of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation. *See Thomas v. Arn,* 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

**JEFFERY S. FRENSLEY**
**United States Magistrate Judge**

31